1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    BRYANNA BERRY,                              Case No.  21-cv-08436-VKD

9              Plaintiff,

10        v.                                       **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANTS'
                                                 MOTION TO DISMISS FIRST
11    CITY OF SAN JOSE, et al.,                   AMENDED COMPLAINT**

12              Defendants.                       Re: Dkt. No. 31

13

14        Plaintiff Bryana Berry filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming

15   that defendants City of San Jose ("City") and San Jose Police Officer Lindsay Parodi violated her

16   civil rights.  Defendants now move pursuant to Rule 12(b)(6) to dismiss the fifth, sixth and

17   seventh claims for relief asserted in Ms. Berry's First Amended Complaint ("FAC").  The seventh

18   claim for relief is a *Monell*[1] claim asserted against the City.  At the April 19, 2022 motion hearing,

19   plaintiffs confirmed that all other claims asserted against the City (i.e., Claims 2 through 6) are

20   based on *Monell* liability, and the City confirmed that in moving to dismiss Claim 7, it in effect

21   seeks dismissal of all claims asserted against it.  Dkt. No. 35.

22        Upon consideration of the moving and responding papers, as well as the oral arguments

23   presented, the Court grants defendants' motion to dismiss in part and denies it in part, with leave

24   to amend.[2]

25

26   _____

     [1] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

27
     [2] All parties have expressly consented that all proceedings in this matter may be heard and finally
28   adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 21.

I.    **BACKGROUND**

The following background facts are drawn from the FAC's factual allegations, which for present purposes, are deemed true.

On the evening of November 2, 2019, Ms. Berry went out for her birthday celebration in San Jose.  Dkt. No. 27 ¶ 8.  Ladonna Jackson, Ms. Berry's friend, drove Ms. Berry from her home in Oakland and the two women stopped at a gas station once they reached San Jose.  *Id*. ¶¶ 8, 9.  Ms. Berry alleges that "[w]ith no warning," San Jose Police Officer Clare Johnson and defendant Officer Parodi pulled their police cruiser behind the car in which Ms. Jackson and Ms. Berry were sitting.  *Id*. ¶ 9.  Officers Johnson and Parodi, both described as "white female[s]," allegedly were part of a police unit that specializes in enforcing laws against prostitution.  *Id*.  Before Ms. Jackson or Ms. Berry exited the car to buy gas, the officers reportedly approached them, demanded identification "and made it clear that Ms. Jackson and [Ms. Berry] were being detained and were not free to leave."  *Id*.

Ms. Berry says she called 911 and requested assistance because "she became frightened that she, a black woman doing nothing wrong, might become a victim of police violence[.]"  *Id*.  The 911 operator reportedly told Ms. Berry that there was nothing she could do to help her and hung up.  Officer Johnson approached the driver's side of the car, while Officer Parodi approached the passenger side where Ms. Berry was sitting.  Ms. Berry says that "[b]ecause she had been racially profiled in the past by San Jose law enforcement, was doing absolutely nothing wrong or illegal, and was frightened, [she] immediately began using her cell phone to video record the encounter and advised [Officer] Parodi she was doing so."  *Id*.

According to the FAC, Officer Parodi "changed her attitude toward [Ms. Berry] and seemingly became enraged" when she saw that Ms. Berry was recording the encounter and "told [Ms. Berry] to put her phone down, so as to prevent [Ms. Berry] from continuing to video and audio record the encounter."  *Id*. ¶ 10.  Officer Parodi allegedly demanded Ms. Berry's identification "in an unnecessarily loud and aggressive voice," and Ms. Berry says that she complied by providing her name and California driver's license number.  *Id*.  But the FAC alleges that Officer Parodi pretended that Ms. Berry had not cooperated and, "in a loud and threatening

United States District Court
Northern District of California

voice" demanded that she exit the car, "while [Ms. Berry] asked what she had done wrong, and protested that she had done nothing wrong." *Id.*

The FAC further alleges that "[i]nstead of explaining her concerns or even asking [Ms. Berry] what she and Ms. Jackson were doing at the gas station," Officer Parodi "reached inside the half open passenger window, and unlocked and opened the passenger door." *Id.* ¶ 11. "Still protesting that she had done nothing wrong," Ms. Berry says that she was attempting to comply with Officer Parodi's requests to exit the car; but her movements were awkward and slower than usual because she was still holding her cell phone to record the incident, which Ms. Berry felt "was a form of insurance for her safety during the encounter." *Id.* Once the passenger door was opened, Officer Parodi allegedly applied a pain compliance hold on Ms. Berry' right wrist, violently pulled her from the car, and threw her on the concrete floor of the gas station. *Id.*

Ms. Berry believes that Officer Parodi "intentionally retaliated against [her] for attempting to audio and video record the encounter and for protesting that she had done nothing wrong." *Id.* She further "alleges that the more she protested her innocence of any wrongdoing, the more violent and aggressive [Officer] Parodi became towards her." *Id.* According to the FAC, Ms. Berry briefly lost consciousness when Officer Parodi threw her to the ground. Officer Parodi also reportedly punched Ms. Berry and used elbow strikes on her head, face and torso, and then placed her knee on Ms. Berry's neck and handcuffed her. *Id.* ¶¶ 11, 12.

After Ms. Berry was arrested and handcuffed, a San Jose police officer, identified in the FAC only as Sergeant "White," arrived with around 20 other officers. *Id.* ¶ 13. Sergeant White and the other officers allegedly laughed and ignored Ms. Berry's pleas for help, and Sergeant White reportedly "was dismissive" of Ms. Berry's complaint about Officer Parodi's conduct. *Id.* Ms. Berry alleges that no law enforcement officer—including Officer Parodi, Officer Johnson, and Sergeant White—mentioned anything to her or to Ms. Jackson about alleged solicitation or prostitution at any point during the encounter. *Id.* Ms. Berry was not charged with prostitution or a related crime, and she says that at no time did Officer Parodi or any other law enforcement officer arrest her for any prostitution-related activity. Reportedly, no officer read Ms. Berry her *Miranda* rights. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Officer Parodi allegedly pulled Ms. Berry up from the ground, pulled her to the police

2    cruiser, and instructed her to enter the back of the cruiser.  But when Ms. Berry was unable to seat

3    herself with her hands cuffed, Officer Parodi allegedly "entered the back seat from the opposite

4    side of the car and pulled [Ms. Berry] by her arms across the seat in a prone position, despite [Ms.

5    Berry's] pain and discomfort."  *Id*. at ¶ 14.  "In short," Ms. Berry says that "throughout the

6    encounter," Officer Parodi "engaged in every conceivable action to cause [Ms. Berry] pain and

7    suffering, in retaliation for [Ms. Berry]'s initial recording of the encounter."  *Id*.

8    The FAC alleges that Officer Parodi's subsequent claim that she believed Ms. Berry was

9    engaged in prostitution is "a sham and fabricated reason to first detain, then beat, and finally arrest

10   [Ms. Berry]."  *Id*.  Here, Ms. Berry alleges that Officer Parodi did not examine the contents of Ms.

11   Berry's purse (and did not, in any event, ask for Ms. Berry's consent) to search for any evidence

12   of prostitution activity "like condoms, sexual aides, and cash."  *Id*.  Instead, Officer Parodi

13   allowed Ms. Jackson to drive away from the scene with Ms. Berry's purse in her car.  *Id*.

14   However, Ms. Berry says that Officer Parodi did confiscate her cell phone and searched its

15   contents, without a warrant or Ms. Berry's consent.  *Id*. ¶ 15.  Officer Parodi reportedly also

16   "contacted and threatened" Ms. Berry's elderly mother, who lives in Texas, causing Ms. Berry

17   "even greater fear, embarrassment, and humiliation."  *Id*.

18   Ms. Berry says she "was in severe pain from her shoulders, clavicle, ribs, torso and arms,"

19   and was taken to a hospital for treatment.  *Id*. ¶ 16.  While there, she claims that Officer Parodi

20   "repeatedly taunted" her; "engaged unnecessary, unwanted, and inappropriate touching of [Ms.

21   Berry's] body"; encouraged another patient to taunt and threaten Ms. Berry and gave that patient

22   Ms. Berry's home address; told Ms. Berry that she looked or dressed like a "hooker;" told Ms.

23   Berry, in the presence of a male nurse, that if Ms. Berry needed to use the restroom she was going

24   to have to "get naked" in front of Officer Parodi; and "threatened to force [Ms. Berry] to pull

25   down her pants and underwear, and urinate in a plastic basin while [Officer] Parodi and male

26   hospital attendants watched."  *Id*.  When making these comments, Officer Parodi allegedly

27   "laughed, licked her lips, and made offensive and inappropriate comments."  *Id*.  When Officer

28   Parodi left the area for a few minutes when summoned to speak with Sergeant White, her police

4

1  partner Officer Johnson allegedly removed Ms. Berry's handcuffs, allowed her to use the

2  restroom, apologized for Officer Parodi's behavior, and admitted that Officer Parodi was wrong in

3  her treatment and arrest of Ms. Berry.  *Id*.

4        After hospital staff determined that Ms. Berry was in stable condition, she was transported

5  to the Santa Clara County jail where she remained incarcerated overnight.  *Id*.  Officer Parodi

6  allegedly "threated to transport [Ms. Berry] wrapped in a blanket from the hospital to jail,"

7  accused Ms. Berry of drug use, requested that hospital staff test Ms. Berry for drugs even though

8  Ms. Berry says she is not a drug user, and "threatened to have [Ms. Berry] tranquilized as

9  retaliation for [Ms. Berry's] protestations of innocence."  *Id*.

10        Ms. Berry was released from custody the following morning at dawn, and Ms. Jackson

11  drove her back home to Oakland.  Ms. Berry alleges that she "was in such pain from the injuries

12  inflicted by [Officer] Parodi that she could not pick up or hold her children to breastfeed them for

13  approximately three months after the encounter."  *Id*. ¶ 17.  Ms. Berry further alleges that after

14  arriving home, she observed Officer Parodi sitting in and then standing outside of a pickup truck

15  less than one block from her home, and "was terrified that [Officer] Parodi was stalking her with

16  bad intent," and feared for her safety and that of her children.  *Id*. ¶ 19.

17        According to the FAC, Officer Parodi later falsely claimed in her police report that Ms.

18  Berry ducked when she saw officers approaching.  Ms. Berry maintains that Officer Parodi's

19  "body worn camera footage of the incident shows to the contrary, that [Ms. Berry] sat upright and

20  made no attempt to hide herself from the officers' view."  *Id*. ¶ 9.  Defendant Parodi allegedly also

21  falsely reported that Ms. Berry provided information when asked for identification, "but could not

22  be recorded," and that she needed to remove Ms. Berry from the car because of Ms. Berry's

23  "furtive movements and . . . [Officer Parodi] could not see what was on the floor of the car."  *Id*.

24  ¶ 10.  The FAC alleges that Officer Parodi's body-worn camera footage "shows otherwise" and

25  that Ms. Berry "limited her movements in the car to raising her hands to demonstrate to [Officer]

26  Parodi that she had no weapon or anything threatening to the officers, and in fact, nothing in her

27  hands except the cell phone with which she was recording the incident."  *Id*.  Officer Parodi's

28  police report also allegedly "falsely accused, but did not charge, [Ms. Berry] of being in San Jose

for the purposes of prostitution, a claim she never once asked about or accused [Ms. Berry] of during the encounter and arrest." *Id.* ¶ 18. Ms. Berry believes that Officer Parodi "racially profiled [her] and her friend [Ms.] Jackson because they are African American, and because [Ms. Berry] was dressed up for her birthday party, believed that she was a prostitute, treated her as though she was a prostitute and sought to detain and then arrest her for prostitution, not because there was any cause to believe, or any evidence, that she was prostituting, but only because she is black." *Id.*

Ms. Berry was not detained or arrested for prostitution or any related offense, but was instead charged with a misdemeanor for resisting arrest. *Id.* According to the FAC, that charge was dismissed after Ms. Berry refused to accept a plea and after her criminal defense attorneys sought discovery of any records concerning Officer Parodi's prior wrongful acts. *Id.* ¶¶ 18, 20.

Ms. Berry filed the present action against the City of San Jose and Officer Parodi on October 29, 2021.[3] The complaint asserted seven claims for relief under 42 U.S.C. § 1983: (1) excessive force (against Officer Parodi); (2) unlawful detention (against Officer Parodi and the City); (3) false arrest (against Officer Parodi and the City); (4) unlawful search and seizure (against Officer Parodi and the City); (5) malicious prosecution (against all defendants);[4] (6) First Amendment violation (against all defendants); and (7) *Monell* claim (against the City). Dkt. No. 1.

Defendants initially moved to dismiss the fourth through seventh claims for relief, arguing that Ms. Berry failed to plead sufficient facts to establish municipal liability and otherwise failed to plead facts supporting a plausible claim for relief. Dkt. No. 20. Defendants' motion was mooted when Ms. Berry timely filed her FAC as of right under Rule 15(a). Dkt. No. 27. The

---

[3] Although titled a "Complaint for Damages," Ms. Berry docketed her original pleading as an "Amended Complaint" (Dkt. No. 1), followed by a second seemingly identical "Complaint" (Dkt. No. 2). At the initial case management conference, her counsel confirmed that he was not aware of any amended pleading and confirmed that the complaint docketed as Dkt. No. 1 is the operative pleading. Dkt. No. 22.

[4] At the motion hearing, Ms. Berry confirmed that claims asserted against "All Defendants" are against the City and Officer Parodi, and not against some other as yet unknown and unnamed defendants. Dkt. No. 35.

United States District Court
Northern District of California

1    FAC asserts the same seven claims for relief asserted in the original complaint.

2          Defendants now move to dismiss Ms. Berry's fifth (malicious prosecution), sixth (First

3    Amendment), and seventh (*Monell*) claims for relief pursuant to Rule 12(b)(6), arguing that the

4    FAC still fails to plead sufficient facts establishing municipal liability and otherwise fails to state a

5    plausible claim for relief.[5]  Upon consideration of the moving and responding papers, the Court

6    grants defendants' motion to dismiss Claim 7 (and Claims 2-6) against the City, as well as Claim 5

7    for malicious prosecution, with leave to amend.  Officer Parodi's motion to dismiss Claim 6 for

8    retaliation under the First Amendment is denied.

9    **II.      LEGAL STANDARD**

10         A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal

11   sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

12   Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts

13   alleged to support a cognizable legal theory.  *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901

14   F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be

15   taken as true and construed in the light most favorable to the claimant.  *Id*.

16         However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

17   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover,

18   "the court is not required to accept legal conclusions cast in the form of factual allegations if those

19   conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness*

20   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

21         Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

22   pleader is entitled to relief."  This means that the "[f]actual allegations must be enough to raise a

23   right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

24   (2007) (citations omitted).  However, only plausible claims for relief will survive a motion to

25   dismiss.  *Iqbal*, 556 U.S. at 679.  A claim is plausible if the facts pled permit the court to draw a

26   reasonable inference that the defendant is liable for the alleged misconduct.  *Id*.  A plaintiff does

27

28   [5] Officer Parodi no longer seeks dismissal of Ms. Berry's fourth claim for relief for unlawful
     search and seizure.

United States District Court
Northern District of California

1    not have to provide detailed facts, but the pleading must include "more than an unadorned, the-

2    defendant-unlawfully-harmed-me accusation." *Id.* at 678.

3    **III.     DISCUSSION**

4        **A.     Claim 7: *Monell***

5        The Court turns first to the *Monell* claim and concludes that Claim 7 and all other claims

6    asserted against the City (i.e., Claims 2-6) should be dismissed for failure to plead sufficient facts

7    establishing a plausible claim for relief.

8        Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

9    policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of the City of New*

10   *York*, 436 U.S. 658, 690 (1978).  However, a city or county may not be held vicariously liable for

11   the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Bd. of*

12   *Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of*

13   *Oakland*, 47 F.3d 1522, 1534 (9th Cir.1995).  "Instead, it is when execution of a government's

14   policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

15   said to represent official policy, inflicts the injury that the government as an entity is responsible

16   under § 1983." *Monell*, 436 U.S. at 694.  "The 'official policy' requirement was intended to

17   distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make

18   clear that municipal liability is limited to action for which the municipality is actually

19   responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

20       To impose municipal liability under § 1983 for a violation of constitutional rights, a

21   plaintiff must show that: (1) the plaintiff possessed a constitutional right of which he or she was

22   deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to

23   the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional

24   violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997).

25   Liability based on a municipal policy may be satisfied in one of three ways:  (1) by demonstrating

26   that a municipal employee committed the alleged constitutional violation under a formal

27   governmental policy or longstanding practice or custom that is the customary operating procedure

28   of the local government entity; (2) by demonstrating that the individual who committed the

United States District Court
Northern District of California

8

1  constitutional tort was an official with final policymaking authority and that the challenged action

2  itself was an act of official governmental policy which was the result of a deliberate choice made

3  from among various alternatives, or (3) by proving that an official with final policymaking

4  authority either delegated policymaking authority to a subordinate or ratified a subordinate's

5  unconstitutional decision or action and the basis for it.  *Gillette v. Delmore*, 979 F.2d 1342, 1346-

6  47 (9th Cir.1992), *cert. denied*, 510 U.S. 932 (1993).  "In order to withstand a motion to dismiss

7  for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of

8  the existence of unlawful policies, customs, or habits."  *Johnson v. City of San Jose*, — F. Supp.

9  3d —, No. 21-cv-01849-BLF, 2022 WL 799424, at *11 (N.D. Cal. Mar. 16, 2022) (internal

10 quotations and citation omitted).

### a.       Custom, Policy, or Practice Allegations

12         A municipality may be held liable on the basis of an unconstitutional policy if the plaintiff

13 is "able to prove the existence of a widespread practice that, although not authorized by written

14 law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or

15 usage' with the force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting

16 *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-168 (1970)).  Such a policy may be evidenced by

17 a pattern of similar acts or incidents.  *Gillette*, 979 F.2d at 1349.  Proof of random acts or isolated

18 incidents, however, are insufficient to establish custom, *Trevino v. Gates*, 99 F.3d 911, 918 (9th

19 Cir.1996), and "[a] single constitutional deprivation ordinarily is insufficient to establish a

20 longstanding practice or custom," *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

21 However, an isolated constitutional violation may be sufficient to establish a municipal policy

22 where (1) "the person causing the violation has 'final policymaking authority,'" (2) "the final

23 policymaker 'ratified' a subordinate's actions," or (3) "the final policymaker acted with deliberate

24 indifference to the subordinate's constitutional violations."  *Christie*, 176 F.3d at 1235, 1238,

25 1240.

26         Ms. Berry alleges that the City "does not have policies and procedures in place sufficient

27 to deter, inhibit or prevent the type of unlawful conduct employed by [Officer] Parodi [i]n the

28 detention and arrest of [Ms. Berry], including but not limited to the use of excessive force" and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "does mot [sic] have adequate policies[,] procedures and training in place to supervise the conduct

2   of its officers, as evienced [sic] by Sergeant White's Inaction during the incident described

3   above." Dkt. No. 27 ¶¶ 41, 42.[6]  The FAC further alleges, on information and belief, that Officer

4   Parodi "was not required to, and did not record her use of force against [Ms. Berry], and that

5   Sergeant White was aware of and/or observed [Officer] Parodi's excessive use of force and/or her

6   unlawful detention of [Ms. Berry], and took no action to train, retrain, supervise or correct

7   [Officer] Parodi's actions." *Id*. ¶ 41.  The FAC, however, contains no factual allegations beyond

8   the incident involving Ms. Berry and essentially alleges that in light of Officer Parodi's alleged

9   misconduct, the City must have violated Ms. Berry's constitutional rights.  These allegations are

10  insufficient to establish a plausible *Monell* claim based on the existence of a policy (or lack

11  thereof) that was widespread or so permanent and well settled as to constitute a custom, policy or

12  practice with the force of law.  *See Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR,

13  2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) (concluding that the plaintiff failed to

14  sufficiently allege a pattern, policy, or custom where the complaint only alleged facts pertaining to

15  the incident involving the plaintiff).

16                  **b.       Ratification**

17          To the extent the FAC appears to allege *Monell* liability based on a ratification theory, the

18  allegations also fall short.  To show ratification, a plaintiff must show that the "authorized

19  policymakers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239

20  (quoting *Praprotnik*, 485 U.S. at 127).  While a single decision by a municipal final policymaker

21  may be sufficient to trigger liability under *Monell*, such liability attaches only where "a deliberate

22  choice to follow a course of action is made from among various alternatives by the official or

23  officials responsible for establishing final policy with respect to the subject matter in question."

24  *Pembaur*, 475 U.S. at 483.

25          In the present case, Ms. Berry alleges that the City "by and through police supervisor

26  Sergeant White, authorized and ratified the unlawful arrest and detention of [Ms. Berry] by

27

28  _____
    [6] The FAC contains duplicative numbering for the paragraphs appearing under Claims 6 and 7.  In this portion of the order, the Court refers to the set of paragraphs appearing under Claim 7.

1    [Officer] Parodi, and authorized and ratified the use of excessive force by [Officer] Parodi," and

2    that "Sergeant White was aware of and/or observed [Officer] Parodoi's excessive use of force

3    and/or her unlawful detention of [Ms. Berry], and took no action to train, retrain, supervise or

4    correct [Officer] Parodi's actions." Dkt. No. 27 ¶¶ 40, 41. These allegations are entirely

5    conclusory, including with respect to Sergeant White's role as a "final policymaker" and the basis

6    for his alleged ratification of Officer Parodi's conduct. Moreover, "[a] mere failure to overrule a

7    subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382

8    F.3d 978, 987 (9th Cir. 2004). *See Rasku v. City of Ukiah*, 460 F. Supp. 3d 934, 945 (N.D. Cal.

9    2020) (same); *Estate of Adomako*, 2018 WL 2234179 at *3 ("A police department's 'mere failure

10   to discipline its officers does not amount to ratification of their allegedly unconstitutional

11   actions.'") (quoting *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir.

12   2014), *rev'd in part, cert. dismissed in part*, 575 U.S. 600 (2015)).

     **c.    Failure to Train Allegations**

14       "In limited circumstances, a local government's decision not to train certain employees

15   about their legal duty to avoid violating citizens' rights may rise to the level of an official

16   government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A

17   municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a

18   failure to train." *Id*. A municipality may be held liable based on a failure to train only where it

19   "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained

20   employees] come into contact.'" *Id*. (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

21   (1989)). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal

22   actor disregarded a known or obvious consequence of his action." *Id.* (internal quotations and

23   citation omitted). "This standard is met when 'the need for more or different training is so

24   obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

25   policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"

26   *Johnson*, — F. Supp. 3d —, 2022 WL 799424, at *10 (quoting *City of Canton*, 489 U.S. at 390).

27   "While deliberate indifference can be inferred from a single incident when 'the unconstitutional

28   consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot

1   be inferred from a single incident." *Hyde v. City of Wilcox*, 23 F.4th 863, 874-75 (9th Cir. 2022)

2   (quoting *Connick*, 563 U.S. at 61). Thus, "[a] pattern of similar constitutional violations by

3   untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes

4   of failure to train." *Connick*, 563 U.S. at 62; *accord Johnson*, , — F. Supp. 3d —, 2022 WL

5   799424 at *10.

6       Ms. Berry's allegations about the City's purported failure to train or inadequate training

7   are entirely conclusory. *See* Dkt. No. 27 ¶ 43 ("Plaintiff is informed and believes and thereupon

8   alleges that neither [Officer] Parodi or Sergeant White were disciplined, trained, or retrained after

9   the incident described herein, and that the failure to train or retrain is due to inadequate policies of

10  the CITY."), ¶ 44 ("Defendants' conduct was the proximate cause of harm and damage to

11  Plaintiff, and by reason of the foregoing alleged acts and conduct Plaintiff is entitled to damages

12  against Defendants all according to proof at trial.").

13      In sum, Ms. Berry's FAC fails to allege sufficient facts to establish a plausible *Monell*

14  claim against the City based on a custom, policy or practice, retaliation, or failure to train.

15  Accordingly, the City's motion to dismiss Claim 7, as well as Claims 2-6, is granted.

16      The Court now turns to the two remaining claims at issue—Claims 5 and 6—against

17  Officer Parodi.

18      **B.    Claim 5:  Malicious Prosecution**

19      In the Ninth Circuit, "the general rule is that a claim of malicious prosecution is not

20  cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to

21  provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987). "However,

22  an exception exists to the general rule when a malicious prosecution is conducted with the intent

23  to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a

24  denial of constitutional rights." *Id*. (internal quotations and citations omitted); *see also Freeman v.

25  City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("[T]o prevail, [a plaintiff] must show that

26  the defendants prosecuted her with malice and without probable cause, and that they did so for the

27  purpose of denying her equal protection or another specific constitutional right."). The Ninth

28  Circuit looks to California law when analyzing § 1983 claims for malicious prosecution. *Awabdy*

1    *v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  "In California, the elements of

2    malicious prosecution are (1) the initiation of criminal prosecution, (2) malicious motivation, and

3    (3) lack of probable cause."  *Usher*, 828 F.2d at 562.  Thus, to plead a malicious prosecution claim

4    under Section 1983, a plaintiff must allege: (1) the initiation of a prosecution which ended in a

5    termination favorable to the plaintiff; (2) lack of probable cause; (3) malice; and (4) that the

6    prosecution was conducted with the intent to deprive the plaintiff of specific constitutional rights.

7    *See Awabdy*, 368 F.3d at 1066; *Freeman*, 68 F.3d at 1189; *Usher*, 828 F.2d at 562.

8        The Court agrees that Ms. Berry's FAC fails to sufficiently describe the basis for Officer

9    Parodi's liability under a malicious prosecution theory.[7]  The FAC indicates that Ms. Berry seeks

10   to hold Officer Parodi liable for malicious prosecution based on the allegedly unlawful detention,

11   arrest, and search/seizure.  *See* Dkt. No. 27 ¶ 40 ("The acts and omissions of the defendants as

12   described herein, and by wrongfully detaining and/or arresting and prosecuting Plaintiff without

13   cause, violated Plaintiff's rights under the laws and Constitution of the United States including but

14   not limited to her right to be free from unreasonable searches and seizures and wrongful

15   prosecution, as guaranteed by the Fourth Amendment to the United States Constitution.").  The

16   body of the FAC also alleges that Officer Parodi's police report of the incident is false.  *See id*.

17   ¶¶ 9, 10, 18.  What remains unclear, however, is how this conduct necessarily correlates with or

18   contributed to the subsequent misdemeanor charge and prosecution against Ms. Berry for resisting

19   arrest.  Officer Parodi's motion to dismiss this claim is granted.

20       **C.    Claim 6:  First Amendment**

21       To plead a claim for First Amendment retaliation, Ms. Berry must allege facts showing

22   that (1) she was engaged in a constitutionally protected activity; (2) the defendants' actions would

23   chill a person of ordinary firmness form continuing to engage in the protected activity; and (3) the

24   protected activity was a substantial or motivating factor in the defendants' conduct.  *O'Brien v.*

25

26   _____

27   [7] Assuming Ms. Berry can amend the FAC to state a plausible claim for malicious prosecution, the
     Court is not persuaded that the malicious prosecution claim necessarily must be dismissed as
     duplicative of Ms. Berry's claims for unlawful detention and arrest.  *See Awabdy*, 368 F.3d at

28   1072 ("In this circuit, nothing prevents Awabdy from bringing both malicious prosecution and
     direct First and Fourteenth Amendment claims in the same § 1983 action.").

United States District Court
Northern District of California

1    *Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citations omitted).  "To prevail on such a claim, a

2    plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory

3    animus' and the plaintiff's 'subsequent injury.'"  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)

4    (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).  "It is not enough to show that an official

5    acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the

6    injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the

7    plaintiff would not have been taken absent the retaliatory motive."  *Id.*; *see also Lacey v.*

8    *Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("[Plaintiff] must allege facts ultimately

9    enabling him to prove the elements of retaliatory animus as the cause of injury,' with causation

10   being 'understood to be but-for causation.'") (quoting *Hartman*, 547 U.S. at 260)).

11          Ms. Berry's alleged protected activity is her recording of the law enforcement encounter

12   and her protestations of innocence.  *See* Dkt. No. 27 ¶¶ 14, 16.  On the present motion, Officer

13   Parodi does not challenge the first two elements of Ms. Berry's First Amendment retaliation

14   claim.  She argues that this claim should be dismissed because the FAC fails to allege sufficient

15   facts demonstrating but-for causation, i.e., that Ms. Berry's protected activity was a substantial or

16   motivating factor in Officer Parodi's alleged conduct.  Specifically, Officer Parodi says that the

17   FAC's allegations indicate that Ms. Berry did not initially comply with her request for

18   identification and instead "immediately began using her cell phone to video record the

19   encounter[.]"  Dkt. No. 27 ¶ 9; Dkt. No. 31 at 8-9.  Officer Parodi contends that Ms. Berry's non-

20   compliance with the request for identification, rather than any alleged protected activity, may have

21   been the reason for the alleged subsequent conduct.  The FAC, however, also alleges other facts

22   suggesting that Officer Parodi's alleged conduct was motivated by Ms. Berry's recording of the

23   encounter and her protestations of innocence.  For example, the FAC alleges that Officer Parodi's

24   demeanor changed when Ms. Berry began recording the incident with her cell phone; that Ms.

25   Berry was attempting to comply with Officer Parodi's requests, but moved awkwardly and slowly

26   because she was still holding her phone to record the incident; and that the more Ms. Berry

27   protested her innocence of any wrongdoing, the more violent and aggressive Officer Parodi

28   became.  Dkt. No. 27 ¶¶ 10, 11.  Crediting Ms. Berry's allegations as true, and construing them in

United States District Court
Northern District of California

14

a light most favorable to her, the Court finds that the FAC alleges sufficient facts to plead but-for causation in support of Ms. Berry's retaliation claim.  Officer Parodi's motion to dismiss this claim is denied.

## IV.    LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

On the present record, the Court cannot rule out the possibility that Ms. Berry may be able to plausibly allege facts supporting municipal liability and her claim for malicious prosecution. Accordingly, the Court will give her leave to amend.

## V.    CONCLUSION

Based on the foregoing, defendants' motion to dismiss the FAC is granted in part and denied in part as follows:  Claims 2-7 are dismissed as to the City.  Claim 5 is also dismissed as to Officer Parodi.  Officer Parodi's motion to dismiss Claim 6 is denied.

Ms. Berry is given leave to amend to state a basis for municipal liability as to Claims 2-7 against the City.  Ms. Berry is also given leave to amend Claim 5 with respect to Officer Parodi. If she chooses to amend her pleading, Ms. Berry shall file her Second Amended Complaint by **June 3, 2022**.

**IT IS SO ORDERED.**

Dated: May 19, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

15