UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRYANNA BERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAN JOSE POLICE OFFICER LINDSAY PARODI (4426),<br><br>　　　　　Defendant. | Case No. 21-cv-08436-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 51 |

In this civil rights action filed pursuant to 42 U.S.C. § 1983, defendant San Jose Police Officer Lindsay Parodi[1] moves for partial summary judgment. Plaintiff Bryanna Berry opposes the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Officer Parodi's motion for partial summary judgment in part and denies it in part.[2]

I.   **BACKGROUND**

This action arises out of an encounter between Ms. Berry and Officer Parodi that occurred in the very early morning hours of November 3, 2019 at a gas station in San Jose, California. According to Ms. Berry, on the night in question she was on a "girls' night out" in San Jose to celebrate her birthday with her friend, Ladonna Jackson. Dkt. No. 52 ¶ 3. Ms. Berry and Ms.

---

[1] Defendant advises that as of November 2022, their legal name is Lindsay Alvarez. *See* Dkt. No. 51-2 ¶ 2. In the briefing on the present motion, the parties continue to refer to defendant as "Officer Parodi." For convenience, and to avoid confusion, the Court will do the same in this order.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 21.

Jackson are both African American women. *Id*. Ms. Berry says that she "enjoy[s] dressing in a stylish and even exotic manner, and did so that evening," as the two women planned to go to a club for drinks. *Id*. Ms. Jackson drove with Ms. Berry in Ms. Jackson's car from Ms. Berry's home in Oakland to San Jose. *Id*. ¶¶ 2, 3; *see also* Dkt. No. 43 ¶ 7. At some point while in San Jose,[3] Ms. Jackson drove into a gas station on First Street to purchase gas and so the women could use the restroom. Dkt. No. 52 ¶ 5. Ms. Jackson says that she paid the attendant at the gas station window for the gas, and then sat in her car, but did not begin pumping gas. Dkt. No. 54, Ex. A (Dkt. No. 54-1 (Jackson Dep. at 15:13-25)). Ms. Berry avers that she did not see Officer Parodi (or Officer Parodi's partner, Clare Johnson) or know that they were there until the officers pulled in behind Ms. Jackson and Ms. Berry at the gas station in their patrol car with flashing lights and siren on. Dkt. No. 52 ¶ 6.

At that time, Officers Parodi and Johnson were in full uniform and on duty as patrol officers, assigned as a two-person unit in a marked patrol vehicle to enforce prostitution laws in the area of First Street and Martha Street in San Jose. Dkt. No. 51-2 ¶¶ 3, 4; *see also* Dkt. No. 51-3 ¶ 3. Noting that "[r]esidents in the area have lodged numerous complaints to the City [of San Jose] and to SJPD [the San Jose Police Department] about prostitution in the neighborhood," Officer Parodi states that "[t]he Monterey Road corridor, ranging from Highway 280 to Alma Avenue (north to south) and Almaden Avenue to South Fifth Street (east to west), has been plagued with prostitution related activity for years." Dkt. No. 51-2 ¶ 5. Officer Johnson also states that the "area bounded by Highway 280, Alma Avenue, Almaden Avenue, and Fifth Street has been well known for prostitution activity for years," and notes that the police work assignment for that evening "included conducting high visibility pedestrian stops and vehicle stops so that people in the area were aware that SJPD was enforcing all laws and attempting to suppress

---

[3] It is unclear whether Ms. Berry and Ms. Jackson drove into the gas station before or after patronizing a club. In her opposition brief, Ms. Berry states that Ms. Jackson drove to the gas station from a club. *See* Dkt. No. 55 at 2. However, in deposition, both Ms. Berry and Ms. Jackson testified that they drove to the gas station upon their arrival in San Jose. *See* Dkt. No. 54-1, Ex. A (Jackson Dep. at 15:4-12); Dkt. No. 56-1, Ex. F (Berry Dep. at 16:8-19). This discrepancy is immaterial to the resolution of the present motion.

1    prostitution and human trafficking." Dkt. No. 51-3 ¶ 4. By November 2019, Officer Johnson had
2    been enforcing prostitution laws in the area for about one year, and Officer Parodi had been doing
3    so for over a year. *See* Dkt. No. 51-2 ¶ 5; Dkt. No 51-3 ¶ 4.

4        According to Officer Parodi, at around 1:27 a.m. on November 3, 2019, they observed a
5    vehicle (as it turns out, Ms. Jackson's car) "several times as it drove around the area, with no
6    apparent destination, consistent with common practice of individuals seeking to engage in
7    prostitution work." Dkt. No. 51-2 ¶ 6; *see also* Dkt. No. 51-3 ¶ 5. The officers later observed the
8    vehicle parked at a Valero gas station on First Street, positioned in such a way that the vehicle was
9    "facing First Street, near the curb separating the gas station from the First Street sidewalk, so that
10   the occupants had a clear view of the street and could easily contact any passing individuals who
11   might be interested in a transaction." Dkt. No. 51-2 ¶ 7; *see also* Dkt. No. 51-3 ¶ 5. Noting that
12   "[t]he vehicle was not getting gas," Officer Parodi avers that based on "training and experience
13   and familiarity with the area, this is a tactic that is commonly used to easily monitor the area by
14   both prostitutes and pimps." Dkt. No. 51-2 ¶ 7. Officer Johnson also states that "prostitution
15   activity is particularly common on this stretch of First Street," and that "individuals soliciting for
16   prostitution may park their vehicles in locations where they can easily see and make contact with
17   others who may be interested in prostitution activity." Dkt. No. 51-3 ¶ 5.

18       As Officer Johnson drove into the gas station, Officer Parodi avers that the passenger of
19   the vehicle, later identified as Ms. Berry, "made eye contact with our patrol vehicle and then
20   ducked down as if attempting to hide herself." Dkt. No. 51-2 ¶ 8. According to Officer Johnson,
21   as she pulled the patrol car behind Ms. Jackson's vehicle, she "observed both occupants of the
22   vehicle look up and turn their heads away from" the patrol car. Dkt. No. 53-1 ¶ 6. Officer Parodi
23   states, "At this point, I believed that Officer Johnson and I had reasonable suspicion to investigate
24   the vehicle's occupants for involvement in prostitution activity." Dkt. No. 51-2 ¶ 9. Additionally,
25   the officers observed that the registration for Ms. Jackson's car expired in September 2019. *Id.*
26   ¶ 10; *see also* Dkt. No. 51-3 ¶ 7.

27       Ms. Berry contends that Ms. Jackson did not "drive around" the area as the officers state in
28   their declarations. Dkt. No. 52 ¶ 5. She also denies making eye contact with the officers or trying

to duck and hide. *Id*. ¶ 6. As noted above, Ms. Berry claims that she did not see the officers or know that they were there until they pulled in behind Ms. Jackson's car. *Id*. ¶¶ 5-6.

The officers exited their patrol car. Officer Johnson contacted Ms. Jackson on the driver's side of the vehicle; Officer Parodi contacted Ms. Berry, who was sitting in the front passenger seat. Dkt. No. 51-2 ¶ 11; Dkt. No. 51-3 ¶ 8. The officers began what they describe as a typical investigation into potential prostitution activity, including "asking subjects for their identification, as well as asking questions about their activities, such as where they are going or coming from and who they are meeting." Dkt. No. 51-2 ¶ 12; *see also* Dkt. No. 51-3 ¶ 8. Officer Johnson asked Ms. Jackson where she and Ms. Berry were coming from, and asked to see Ms. Jackson's driver's license. Dkt. No. 51-3 ¶¶ 9, 17 & Ex. D. Ms. Jackson did not have a driver's license and instead gave Officer Johnson her passport. *Id*. Ms. Berry asked Officer Johnson, "What are you asking her for her driver's license for?" and then told Ms. Jackson, "You shouldn't even give it to her because you should ask why she asked for it." *Id*. Officer Johnson replied that Ms. Jackson's vehicle registration had expired, which Ms. Jackson acknowledged. *Id*.

Upon contact with Ms. Berry, Officer Parodi observed that Ms. Berry's "clothing was not consistent with the 48-degree temperature of that early morning," noting that she "wore white low-cut shorts that exposed her lower buttocks, a white top that showed her entire stomach and back, and six-inch glass heels." Dkt. No. 51-2 ¶ 13. Ms. Berry does not dispute that "[i]t was chilly that evening," but says that she also brought a heavy, warm sweater to wear during periods when she and Ms. Jackson would be outside the club or outside Ms. Jackson's heated car. Dkt. No. 52 ¶ 3. Officer Parodi maintains that Ms. Berry's dress and appearance contributed to their suspicion that Ms. Berry "may have been engaged in prostitution activity." Dkt. No. 51-2 ¶ 13.

Shortly after Officer Parodi initiated contact with Ms. Berry, Ms. Berry began recording the encounter on her cell phone and told Officer Parodi that she was doing so. Dkt. No. 51-2 ¶¶ 14, 30 & Ex. B; *see also* Dkt. No. 43 ¶ 8. Officer Parodi replied "That's fine, you can record," but asked Ms. Berry to set her cell phone down, explaining "I don't want anything in your hands." Dkt. No. 51-2 ¶¶ 14, 30 & Ex. B. Citing training and personal experience, Officer Parodi states that "subjects can use a cell phone as a weapon, either by using it as an object with which to strike

someone, or by throwing the phone," or "use their cell phone to communicate with friends or family and invite them to come to the scene, which poses a danger to officers." *Id.* ¶¶ 15, 16.

When Officer Parodi asked her to put her cell phone down, Ms. Berry held her hands up so that they were visible, but did not put her phone down, at one point stating "I have anxiety with police officers." Dkt. No. 51-2 ¶ 30, Ex. B. Ms. Berry avers that she has "had a longstanding acute fear of police" and had been in therapy for anxiety prior to the November 3, 2019 incident. Dkt. No. 52 ¶ 7. She claims that when she saw the officers' flashing lights and heard their siren, her "fear and anxiety became overwhelming." *Id.* Ms. Berry says that before Officer Parodi approached, she "called 911 for help and to send a supervisor, because [she] was scared." *Id.* As Officer Parodi approached Ms. Jackson's vehicle, Ms. Berry says she used her cell phone to make an audiovisual recording of the incident to ensure "that the officers would not do anything to harm [Ms. Jackson] and me." *Id.*

Officer Parodi asked Ms. Berry for her identification. Ms. Berry responded, "I don't have I.D. for you," then stated, "I have an I.D., but I'm not giving it to you because my cousin [referring to Ms. Jackson] has a license."[4] Dkt. No. 51-2 ¶ 18, 30 & Ex. B. According to Officer Parodi, "Ms. Berry's refusal to provide identification, refusal to put her phone down, and arguing with me may have been attempts to distract me or attempts to conceal something, such as a weapon or that she was a wanted person, or to discourage further law enforcement investigation." *Id.* ¶ 19. Officer Parodi asked Ms. Berry to step out of the car, maintaining that it was necessary to have her "step out of the vehicle for officer safety reasons." *Id.* ¶ 23. After Officer Parodi asked Ms. Berry to step out of Ms. Jackson's car, Ms. Berry remained seated in the car, but verbally stated her name and an identification number. Officer Parodi claims that at that point, they could not "record [Ms. Berry's] information because of Ms. Berry's failure to cooperate and concerns for the safety of myself and my partner, Officer Johnson." Dkt. No. 51-2 ¶ 20. Officer Parodi explains that confirming Ms. Berry's identity would require "writ[ing] down the

---

[4] In deposition, Ms. Jackson noted that she and Ms. Berry grew up together and "call each other cousins," although they are not biologically related. Dkt. No. 54, Ex. A (Dkt. No. 54-1, Jackson Dep. at 16:23-24).

5

information she verbally provided and either contact[ing] SJPD communications/dispatch or return[ing] to the patrol vehicle to have a records check performed." *Id*. In view of "what had transpired thus far," Officer Parodi did not believe it was safe to take their attention away from Ms. Berry to perform these tasks. *Id*.

Officers Parodi and Johnson filed body-worn camera footage of the incident. Ms. Berry maintains that the defense has mischaracterized the events reflected in those videos. But what appears to be undisputed is that Officer Parodi asked Ms. Berry a number of times to put down her cell phone and to step out of Ms. Jackson's car; Ms. Berry remained seated in the car holding her cell phone; Officer Parodi eventually unlocked and opened the passenger-side door, warning Ms. Berry that she would be arrested for obstructing the officers' investigation; Ms. Berry eventually placed her feet outside of Ms. Jackson's car after Officer Parodi unlocked and opened the door; and Officer Parodi took hold of Ms. Berry's right wrist, handcuffed her, and placed her under arrest. It is also undisputed that during the incident, Officer Parodi's body-worn camera was dislodged and did not capture a part of the interaction with Ms. Berry.

The parties otherwise dispute how events unfolded. According to Officer Parodi's account:

> I was able to place Ms. Berry in handcuffs, with her hands behind her back. Still, Ms. Berry refused to get out of the car. I then reached under her arm in an attempt to guide her out of the vehicle. I raised my voice again, saying "Get out of the f—— vehicle right now."
>
> At this point, Ms. Berry released her body weight, fell to her knees, and threw herself onto the ground. She kicked her legs and loudly and repeatedly yelled "You wanna shoot me?" Based on my training and experience, yelling is a tactic used by subjects to distract officers. I placed my shin on Ms. Berry's lower torso for a few seconds, applying light pressure to keep her to the ground. As soon as I realized that Ms. Berry was not attempting to escape, I stood back up and backed away. Ms. Berry continued to scream and kick on the ground by herself. No one was touching her at this time.

Dkt. No. 51-2 ¶¶ 27-28. According to Ms. Berry's version of events, Officer Parodi placed a pain compliance hold on her right wrist and then:

> Defendant Parodi started pulling me hard forward by my arm out of the passenger seat of the car and this put me off balance and I feel [sic] to the ground on my knees. As soon as I feel [sic] to my knees,

6

> Defendant Parodi forcefully threw me forward and down, and I fell prone to the concrete floor of the gas station bay, striking my head, and shoulder. I did not simply fall to the floor of the bay as Defendant Parodi has stated. I hit my head on the concrete hard enough that I briefly lost consciousness. The entire incident up to this point took place in a very short time, perhaps a minute and a half.

Dkt. No. 52 ¶ 10. Ms. Berry denies that she kicked her legs while on the ground. *Id*. ¶ 12. Additionally, Ms. Berry claims that while she was face-down on the ground and could not see what Officer Parodi was doing, she felt blows from what she believes may have been fists, elbows, or a baton. *Id*. ¶ 11. Further, Ms. Berry states that Officer Parodi had a knee on her upper (not lower) back, and Ms. Berry says that she could not breathe because of the pressure being placed on her back by Officer Parodi. *Id*. Ms. Berry says that the alleged use of force was not captured on the body-worn camera footage because it occurred during the time when the camera was dislodged. *Id*.

Ms. Berry maintains that neither she nor Ms. Jackson did anything wrong; there were no weapons, drugs, or alcohol in Ms. Jackson's car; and there was no evidence of any prostitution activity. She denies that she or Ms. Jackson engaged in, or planned to engage in, any prostitution activity. In her view, the encounter with Officer Parodi was an incident of racial profiling. *See* Dkt. No. 52 ¶¶ 4, 7, 8.

Ms. Berry was not detained or arrested for prostitution or any related offense, but was instead charged with violation of California Penal Code § 148(a)(1), which makes it a misdemeanor to "willfully resist, delay, or obstruct any public officer, peace officer . . . . in the discharge or attempt to discharge any duty of his or her office or employment." *See* Dkt. No. 54-3. In the criminal proceedings, Ms. Berry sought discovery of records concerning any prior wrongful acts by Officer Parodi. Dkt. No. 54-5. On the date that Ms. Berry's discovery motion was to be heard by the court, the district attorney dropped the criminal charge against Ms. Berry. Dkt. No. 54-6.

Ms. Berry filed the present action, originally naming the City of San Jose ("City") and Officer Parodi as defendants. The complaint asserted seven claims for relief under 42 U.S.C. § 1983: (1) excessive force (against Officer Parodi); (2) unlawful detention (against Officer

1  Parodi and the City); (3) false arrest (against Officer Parodi and the City); (4) unlawful search and
2  seizure (against Officer Parodi and the City); (5) malicious prosecution (against all defendants);
3  (6) First Amendment violation (against all defendants); and (7) *Monell*[5] claim (against the City).
4  Dkt. No. 1.  The Court granted the City's motion to dismiss all claims asserted against it, granted
5  Officer Parodi's motion to dismiss the malicious prosecution claim, and denied Officer Parodi's
6  motion to dismiss the First Amendment claim.  Ms. Berry was given leave to amend.  *See* Dkt. No.
7  38.

       Ms. Berry's operative third amended complaint drops all claims against the City and asserts six claims under 42 U.S.C. § 1983 against Officer Parodi, the sole remaining defendant, for (1) excessive force, (2) unlawful detention, (3) false arrest, (4) unlawful search and seizure, (5) malicious prosecution, and (6) violation of First Amendment rights.  Dkt. No. 43.

       Officer Parodi now moves for summary judgment on Ms. Berry's second through sixth claims for relief.  Ms. Berry's claim for use of excessive force is not at issue in the present motion.

## II.   LEGAL STANDARD

       A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

       If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See id*. at 1102.  The non-moving party may

---

[5] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

1   not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce

2   admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A

3   genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is

4   "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477

5   U.S. at 248-49.

6        "When the nonmoving party has the burden of proof at trial, the moving party need only

7   point out 'that there is an absence of evidence to support the nonmoving party's case.'"

8   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at

9   325). Once the moving party meets this burden, the nonmoving party may not rest upon mere

10  allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine

11  issue for trial. *Id.*

## III.   DISCUSSION

### A.   Defense Objections to Roger Clark Opinions

In support of her opposition to Officer Parodi's motion for summary judgment, Ms. Berry submitted a report written by her retained expert, Roger Clark.[6] Officer Parodi objects to Mr. Clark's report on the grounds that Mr. Clark (1) purports to recite facts about what occurred during and after the encounter between Ms. Berry and Officers Parodi and Johnson; (2) bases his opinions on speculation; and (3) offers improper legal conclusions. Officer Parodi also contends that Mr. Clark's opinions are irrelevant, particularly with respect to Ms. Berry's excessive force claim that is not at issue on the present motion. Officer Parodi requests that the Court strike Mr. Clark's declaration and all references to his report and opinions in Ms. Berry's opposition papers.

To the extent Ms. Berry relies on Mr. Clark's report and the opinions expressed therein as "evidence" of Officer Parodi's alleged unreasonable conduct, her reliance is misplaced. Mr. Clark was not a witness to the events in question; he simply offers his opinion about what he contends are the salient facts. *See City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015) (stating that "a plaintiff cannot "avoi[d] summary judgment by simply producing an expert's

---

[6] Ms. Berry neglected to submit Mr. Clark's report with her opposition papers, and later filed it through the declaration of her counsel. *See* Dkt. No. 58.

9

report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.") (internal quotations and citation omitted); *Lal v. California*, No. C 06–5158 PJH, 2012 WL 78674, at *8 (N.D. Cal. Jan. 10, 2012) (explaining that Mr. Clark's "testimony relied on by plaintiffs does nothing more than second guess the officers' conduct with the benefit of hindsight—an act of supposition that is expressly disallowed."), *aff'd* 746 F.3d 1112 (9th Cir. 2014). Accordingly, Mr. Clark's opinions and report are not probative of matters under consideration in the present motion. While the Court does not find it necessary or appropriate to strike Mr. Clark's declaration and opinions from the record, for purposes of resolving the present motion, Officer Parodi's objections to Mr. Clark's declarations and opinions are sustained.

### B.     Claim 2:  Unlawful Detention

Ms. Berry claims that Officer Parodi violated her Fourth Amendment rights by "racially profiling and detaining [Ms. Berry] solely because she is African American[.]" Dkt. No. 43 ¶ 27. Officer Parodi contends that reasonable suspicion supported Ms. Berry's detention and that, in any event, qualified immunity applies and precludes liability.

#### 1.     Reasonable Suspicion

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, (1968)). "*Terry* created a limited exception to th[e] general rule" that police detentions require probable cause, wherein "certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). Thus, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, . . . and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." *Id.* "The Fourth Amendment requires some minimal level of objective justification for making the

10

stop," *Sokolow*, 490 U.S. at 7 (internal quotations and citation omitted), and "an officer's reliance on a mere 'hunch' is insufficient," *Arvizu*, 534 U.S. at 274 (citing *Terry*, 392 U.S. at 7; *Sokolow*, 490 U.S. at 7); *see also United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996) ("Permissible deductions or rational inferences must be grounded in objective facts and be capable of rational explanation[.]").

"The specific question of whether a reasonable suspicion existed under given facts is a legal conclusion[.]" *Michael R.*, 90 F.3d at 345. In making reasonable-suspicion determinations, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273; *see also United States v. Cortez*, 449 U.S. 411, 417 (1981) (stating that "the totality of the circumstances—the whole picture—must be taken into account" when determining if an officer had reasonable suspicion to perform an investigatory stop). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (internal quotations and citation omitted). "The facts are to be interpreted in the light of a trained officer's experience." *Michael R.*, 90 F.3d at 346. "This includes the collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *Id.* (internal quotations and citations omitted). "No single factor is dispositive in this assessment; the issue is whether "taken together they amount to reasonable suspicion.'" *Id.* (quoting *Sokolow*, 490 U.S. at 9).

It is undisputed that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," although "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Officer Parodi argues that there are sufficient facts, in addition to Ms. Berry's presence in an area known for prostitution, to support reasonable suspicion of potential prostitution activity— namely, when the officers pulled into the gas station behind Ms. Jackson's car, they knew that (1) it was late at night, (2) Ms. Jackson's car was parked at the gas station on a section of First

11

Street, where officers say prostitution activity is particularly common; (3) Ms. Jackson's car was not being filled with gas, and (4) Ms. Jackson's car was positioned near the curb and facing First Street, which officers state is a tactic commonly used by prostitutes and pimps to monitor the area for potential customers. Dkt. No. 51-2 ¶ 7; Dkt. No. 51-3 ¶ 5. Although undisputed, these facts are, without more, insufficient to establish reasonable suspicion for detention in view of the totality of the circumstances, particularly in view of other undisputed facts. For example, body-worn camera footage shows that while Ms. Jackson's car was positioned near a street curb, it was also parked right next to a gas pump. *See* Dkt. No. 51-2 ¶ 30, Ex. B; Dkt. No. 51-3 ¶ 17, Ex. D. The Court is mindful that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277; *see also Sokolow*, 490 U.S. at 10 ("[T]here could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.") (internal quotations and citation omitted); *Michael R.*, 90 F.3d at 346 ("Even if some of the factors viewed alone appear innocent, taken collectively, they establish the requisite degree of suspicion to conduct an investigatory stop.").

Moreover, there are two additional factors that Officer Parodi does not rely on in bringing the present motion, but which nonetheless are part of the totality of circumstances that the Court must consider, and which are disputed. First, the parties dispute whether Ms. Jackson drove around the area before pulling into the gas station. Officer Parodi says that during their shift, Ms. Jackson's vehicle was observed driving around the area, "with no apparent destination, consistent with common practice of individuals seeking to engage in prostitution work." Dkt. No. 51-2 ¶ 6. Officer Johnson also says that several times during their shift, she and Officer Parodi observed Ms. Jackson's car "with significant front end damage driving southbound on First Street, toward Alma, through side streets, and back around to northbound First Street." Dkt. No. 51-3 ¶ 5. Ms. Berry denies that Ms. Jackson drove around the area, indicating that they simply needed to get gas and use the restroom, and Ms. Jackson already knew where the gas station was based on her prior visits to the area. Dkt. No. 52 ¶ 5.

Second, the parties dispute whether Ms. Jackson and Ms. Berry made any "furtive" movements when the officers pulled into the gas station, i.e., by looking away or trying to duck

12

and hide. Officer Parodi says that as they pulled into the gas station, Ms. Berry made eye contact with the patrol vehicle and then ducked down. Dkt. No. 51-2 ¶ 8. Officer Johnson avers that she saw both Ms. Jackson and Ms. Berry look up and then turn their heads away from the patrol vehicle. Dkt. No. 51-3 ¶ 6. Ms. Berry denies making eye contact, ducking, or hiding, and says that as far as she is aware, Ms. Jackson did not turn toward the patrol car and then turn away. Dkt. No. 52 ¶ 6.

Officer Parodi downplays these fact disputes, arguing that they are not the basis for the summary judgment motion and are, in any event, immaterial. However, Officer Parodi's declaration indicates that it was only after reportedly seeing Ms. Berry duck and hide that they determined there was reasonable suspicion to investigate for potential prostitution activity. *See* Dkt. No. 51-2 ¶ 9 ("*At this point*, I believed that Officer Johnson and I had reasonable suspicion to investigate the vehicle's occupants for involvement in prostitution activity.") (emphasis added). The Court therefore cannot conclude that these fact disputes are immaterial to the issue of whether there was reasonable suspicion for Ms. Berry's detention.

Accordingly, Officer Parodi's motion for partial summary judgment on Ms. Berry's claim for unlawful detention is denied.

### 2. Qualified Immunity

"'The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (establishing the two-part test). In determining whether an officer is entitled to qualified immunity, courts consider "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Estate of Lopez*, 871 F.3d at 1005 (internal quotations and citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

"Courts should decide issues of qualified immunity as early in the proceedings as possible, but when the answer depends on genuinely disputed issues of material fact, the court must submit the fact-related issues to the jury." *Ortego v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998). "The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000).

Here, Officer Parodi seems to contend that the law is not so clear that they should have known there was no reasonable suspicion to detain Ms. Berry, given other factors such as the position of Ms. Jackson's car at the gas station and the fact that the car was not being filled with gas. *See Baglieri v. City & Cnty. of San Francisco*, No. C 10-00284 MEJ, 2011 WL 62224, at *9 (N.D. Cal. Jan. 7, 2011) (concluding that officer was entitled to qualified immunity for an initial detention based on presence in a high crime area and an uncorroborated tip, where the court could not "state that the law governing the totality of the circumstances inquiry in reasonable suspicion cases is so clear that [the officer] should have known he did not have reasonable suspicion to detain Plaintiff."); *Loharsingh v. City & Cnty. of San Francisco*, 696 F. Supp. 2d 1080, 1097 (N.D. Cal. 2010) ("In cases where the court has relied on an individual's presence in an area of criminal activity, it has been combined with other facts supporting the existence of reasonable suspicion. Evasive behavior, furtive movements, and suspicious eye contact are all relevant factors in evaluating whether the totality of the circumstances supports reasonable suspicion.") (*citing Wardlow*, 528 U.S. at 124).

As discussed above, however, there are material fact disputes concerning the totality of the circumstances relevant to the question of whether Officer Parodi had a reasonable suspicion that Ms. Berry was engaging in prostitution activity. On this record, the Court cannot rule, as a matter of law, that qualified immunity applies to Ms. Berry's claim for unlawful detention. Accordingly, Officer Parodi's motion for summary judgment on that basis is denied.

### C. Claim 3: False Arrest

Ms. Berry claims that her arrest was unlawful and violated her Fourth Amendment rights. *See* Dkt. No. 43 ¶ 31. Officer Parodi moves for summary judgment, arguing that there was

14

probable cause to arrest Ms. Berry for violation of California Penal Code § 148(a)(1). Even if there was no probable cause for Ms. Berry's arrest, Officer Parodi contends that qualified immunity applies.

Officer Parodi contends that there was probable cause to arrest Ms. Berry for violation of California Penal Code § 148(a)(1) because Ms. Berry refused to comply with instructions to (1) put down her cell phone, (2) provide identification, and (3) exit the vehicle. Additionally, Officer Parodi contends that there were several instances where Ms. Berry obstructed the officers' investigation into potential prostitution activity, namely by (1) telling Ms. Jackson that she should not comply with Officer Johnson's request for identification, (2) by refusing multiple repeated instructions from Officer Parodi to put down her cell phone, provide identification, and exit the car, and (3) yelling, "Do you want to shoot me?," which Officer Parodi avers was a diversionary tactic. *See* Dkt. No. 51-2 ¶¶ 15-26, 30 & Ex. B; Dkt. No. 51-3 ¶¶ 8-10, 12-15, 17 & Ex. D. Pointing out that she did, eventually, identify herself, Ms. Berry disputes whether these facts are sufficient to create probable cause for her arrest. Officer Parodi maintains that Ms. Berry was not arrested for merely refusing to provide her identification. For purposes of resolving the present motion, however, there is no need to belabor the issue. At oral argument, Officer Parodi acknowledged that Ms. Berry's claim for unlawful arrest is linked to her claim for unlawful detention, such that the ultimate issue is whether there was, in the first instance, a valid basis for Ms. Berry's detention.

Because the Court finds that there are material fact disputes that preclude summary judgment on Ms. Berry's unlawful detention claim, Officer Parodi's motion for summary judgment on the related unlawful arrest claim is denied. Those fact disputes also preclude summary judgment on the basis of qualified immunity. *See LaLonde*, 204 F.3d at 953; *Ortego*, 146 F.3d at 1154.

**D.     Claim 4:  Unlawful Search and Seizure**

Ms. Berry claims that Officer Parodi violated her Fourth Amendment rights by unlawfully searching the contents of Ms. Berry's phone. Dkt. No. 43 ¶ 14. Officer Parodi contends that Ms. Berry does not have sufficient evidence to support her claim.

Officer Parodi is entitled to summary judgment on Ms. Berry's claim for unlawful search and seizure. The evidence Ms. Berry cites in support of her claim is insufficient to create a genuine issue of material fact. In deposition, Ms. Berry testified that she believed Officer Parodi searched her phone because after Ms. Berry was released from jail and retrieved her phone, she noticed a "GPS tracker" on the phone. *See* Dkt. No. 51-1, Ex. E (Berry Dep. at 75:25-77:25, 78:3-5; 78:12-79:3). In her opposition, Ms. Berry states in her declaration that while she was being booked at the jail, Officer Parodi remarked, "See you later, Ms. Walker."[7] This is a statement that Ms. Berry said she initially interpreted as a veiled threat (*see* Dkt. No. 56-1, Ex. F (Berry Dep. at 69:21-70:19)), but now says that it also indicates that Officer Parodi must have searched her phone. Here, Ms. Berry says that "Walker" is her mom's surname, and Officer Parodi could not have known that without searching Ms. Berry's phone. Dkt. No. 52 ¶ 16. Ms. Berry offers no forensic or other evidence suggesting that Officer Parodi (or anyone else) searched her cell phone.

Even assuming Ms. Berry's assertions about a "GPS tracker" on her phone and Officer Parodi's purported statement are true, the conclusions she asks the Court to draw are based on speculation, and thus are insufficient to raise a genuine issue of material fact as to whether her constitutional rights were violated by Officer Parodi. *See Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) (holding that "vague, uncorroborated, and clearly self-interested testimony did not create a genuine issue for trial"); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Accordingly, Officer Parodi's motion for summary judgment on Ms. Berry's claim for unlawful search and seizure is granted.

### E.   Claim 5:  Malicious Prosecution

Ms. Berry claims that Officer Parodi maliciously prosecuted her "by wrongfully detaining and/or arresting and prosecuting Plaintiff without cause," and by filing a false police report of the November 3, 2019 incident. *See* Dkt. No. 43 ¶¶ 39-40.

---

[7] At the motion hearing, defense counsel noted that Officer Parodi denies making such a statement.

16

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To prevail on a malicious prosecution claim, a plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). "[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Id*. "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy*, 368 F.3d at 1068. For example, "a dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Id*. The Ninth Circuit looks to California law when analyzing § 1983 claims for malicious prosecution. *Awabdy*, 368 F.3d at 1066. "In California, the elements of malicious prosecution are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause." *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987).

Officer Parodi maintains that Ms. Berry's detention and arrest were lawful, and that the malicious prosecution claim therefore fails. *See* Dkt. No. 51 at 16. To the extent that the malicious prosecution claim is based on alleged false statements in a police report (e.g., that Ms. Berry made furtive movements, or that she fell and was not thrown to the ground), Officer Parodi contends that any such statements are irrelevant to Ms. Berry's prosecution for violation of California Penal Code § 148(a)(1). As discussed above, however, Officer Parodi acknowledges that Ms. Berry's claims for unlawful detention and arrest are related, and the Court finds that there are material disputed facts that preclude summary judgment on those claims. Accordingly, Officer Parodi's motion for summary judgment on Ms. Berry's claim for malicious prosecution is denied.

### F. Claim 6: First Amendment Rights

Ms. Berry claims that when Officer Parodi "saw that [she] was recording the encounter," Officer Parodi "seemingly became enraged" and "interfered with [Ms. Berry]'s right to video and

audio record the encounter" by telling Ms. Berry "to put her phone down, so as to prevent [her] from continuing to video and audio record the encounter." Dkt. No. 43 ¶ 9. Ms. Berry further contends that Officer Parodi used excessive force against her during the encounter in order to "retaliate[] against [her] for attempting to audio and video record the encounter and for protesting that she had done nothing wrong," and became "more violent and aggressive" as Ms. Berry continued to "protest her innocence of any wrongdoing." *Id*. ¶ 10.

To establish a claim for First Amendment retaliation, a plaintiff must show that (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness form continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citations omitted). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*.; *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("[Plaintiff] must allege facts ultimately enabling him to prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'") (quoting *Hartman*, 547 U.S. at 260)).

Officer Parodi argues that Ms. Berry cannot show that her recording of the encounter and her protestations of innocence were the but-for cause for Officer Parodi's alleged retaliatory use of force. While Ms. Berry's operative complaint focuses on the alleged use of excessive force, her pleading indicates that the First Amendment retaliation claim is also more broadly based on Ms. Berry's subsequent arrest and prosecution. *See, e.g.,* Dkt. No. 43 ¶¶ 13, 16. Because material fact disputes preclude summary judgment on Ms. Berry's claims for unlawful detention, unlawful arrest, and malicious prosecution, Officer Parodi's motion for summary judgment on the First Amendment retaliation claim also is denied.

## IV. CONCLUSION

Based on the foregoing, Officer Parodi's motion for partial summary judgment is granted as to the fourth claim for relief based on unlawful search and seizure, but is otherwise denied in all other respects..

**IT IS SO ORDERED.**

Dated: February 22, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge