UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRYANNA BERRY,<br><br>        Plaintiff,<br><br>    v.<br><br>SAN JOSE POLICE OFFICER LINDSAY PARODI (4426),<br><br>        Defendant. | Case No. 21-cv-08436-VKD<br><br>**PRETRIAL ORDER NO. 1** |

The Court held a final pretrial conference on April 12, 2023, and now orders as follows:

**1. Issues to Be Decided at Trial**

Several issues remain for trial: (1) whether defendant Detective Lindsay Alvarez used excessive force against Ms. Berry in violation of the Fourth Amendment (claim 1); (2) whether Detective Alvarez unlawfully detained Ms. Berry in violation of the Fourth Amendment (claim 2); (3) whether Detective Alvarez unlawfully arrested Ms. Berry in violation of the Fourth Amendment, (claim 3); (4) whether Detective Alvarez is liable for malicious prosecution (claim 5); (5) whether Detective Alvarez violated Ms. Berry's First Amendment rights (claim 6); and (6) what amount of damages should be awarded to Ms. Berry for any of the above-listed violations that are established.[1]  Dkt. No. 68 at 2-3.

The parties also dispute whether Detective Alvarez is entitled to assert a defense of qualified immunity. *See id.* at 3. The Court defers consideration of this issue until such time as it may be necessary to resolve the dispute.

---

[1] The Court granted summary judgment in favor of Detective Alvarez on Ms. Berry's claim for unlawful search and seizure (claim 4). *See* Dkt. No. 61.

**2. Bifurcation of Liability Issues and Punitive Damages**

Trial will be bifurcated regarding liability issues and punitive damages. The Court has broad discretion under Rule 42 to bifurcate trial of one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ("Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings[.]") (internal quotations and citation omitted). The Ninth Circuit has observed that "the normal procedure is to try compensatory and punitive damage claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." *Hangarter,* 373 F.3d at 1021. Nevertheless, courts within the Ninth Circuit often bifurcate the issue of punitive damages in § 1983 cases. *See Monroe v. Griffin*, No. 14-cv-00795-WHO, 2015 WL 5258115, at *5 (N.D. Cal. Sept. 9, 2015) (citing cases).

Ms. Berry requests bifurcation of the trial regarding "punitive damages and liability issues." *See* Dkt. No. 68 at 6. At the pretrial conference, Detective Alvarez agreed that bifurcation is appropriate. Additionally, it is not apparent that bifurcation raises any serious efficiency concerns, as the same jury that decides liability and entitlement to punitive damages may also decide the amount of punitive damages. Accordingly, if, in the first phase of trial, the jury finds in favor of Ms. Berry on liability issues and finds that she is entitled to punitive damages, trial will immediately proceed to a second phase in which the same jury will consider the amount of punitive damages to award.

**3. Neutral Statement of the Case**

As discussed at the pretrial conference, the parties shall revise their proposed neutral statement of the case to refer to the parties by their names, rather than as "plaintiff" and "defendant." The Court will defer to Detective Alvarez whether they prefer to be referred to as "Officer Parodi" or "Detective Alvarez." In any event, the parties should retain the portion of their current statement explaining that Officer Parodi is now known as Detective Alvarez. By **April 19, 2023**, the parties shall file their revised proposed neutral statement of the case on ECF.

**4. Objections to Trial Witnesses**

For the reasons stated on the record during the pretrial conference, the Court resolves Detective Alvarez's objections to Ms. Berry's trial witnesses as follows:

Ms. Berry's proposal to call seven witnesses (i.e., Doris Walker, Ashley Walker, Jessica Ramirez, Julias Walker, Alfreada Watson, Maquesta Pendleton, and Kevin Brown) to testify about her birthday party is needlessly duplicative and cumulative. Ms. Berry and Ms. Jackson—both of whom are identified as trial witnesses, and as to whom Detective Alvarez has asserted no objection—can testify about the fact of Ms. Berry's birthday celebration. Ms. Berry does not claim that any of her proposed seven additional witnesses has any new or different information about her birthday party; and, she acknowledged at the pretrial conference that she does not need to call all seven witnesses to testify about that event. Ms. Berry may call no more than one of the seven proposed additional witnesses to testify about her birthday celebration.

Ms. Berry will not be permitted to call Doris Walker, Ashley Walker, or Kevin Brown to testify about her injuries. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). At the pretrial conference, although Ms. Berry stated that she may have testified in deposition regarding individuals with knowledge of her injuries, she was not certain on that point. In any event, there is no dispute that Ms. Berry belatedly disclosed Doris Walker, Ashley Walker, and Kevin Brown as witnesses with information about her injuries. Ms. Berry offered no explanation for the tardy disclosure. Detective Alvarez stated that they decided not to depose these individuals in discovery. Under these circumstances, the Court does not find that the failure to timely disclose these individuals as witnesses regarding Ms. Berry's injuries was substantially justified or harmless.

Ms. Berry lists several medical records custodians as trial witnesses. *See* Dkt. No. 68-1 at 4-5. Inasmuch as Detective Alvarez's objections concerning these witnesses are based on objections to the underlying records, these custodians/records are discussed below in connection

1   with Ms. Berry's proposed Exhibits 13-17.

2   Ms. Berry does not object to any of Detective Alvarez's trial witnesses.

**5. Objections to Trial Exhibits**

For the reasons stated on the record during the pretrial conference, the Court resolves Detective Alvarez's objections[2] to Ms. Berry's trial exhibits as follows:

### a. Ms. Berry's Exhibit 2 (Cell Phone Video)

This exhibit purportedly shows the video Ms. Berry says she recorded during the November 3, 2019 encounter. Ms. Berry argues that the video is relevant to show that she recorded it, but she does not claim that the video shows anything different from the officers' body-worn camera footage of the incident. Detective Alvarez objects principally on the ground that the video was not timely disclosed in discovery. Detective Alvarez also objects that the proposed exhibit lacks foundation. Fed. R. Evid. 901.

Although Ms. Berry disclosed this video in her Rule 26(a) initial disclosures, she indisputably did not produce it until nearly a month after the November 30, 2022 fact discovery cutoff. Ms. Berry was in possession of this video well before the filing of this action. To the extent she intended to rely on this evidence, it was incumbent upon her to timely produce it in discovery, or to seek an extension of deadlines from the Court as necessary. Ms. Berry did neither. Although Ms. Berry states that the video is merely a mirror image of a portion of Detective Alvarez's body-worn camera footage, she does not refute Detective Alvarez's assertion that the subject video appears to be *a video of* the video Ms. Berry says she recorded at the time of the November 3, 2019 encounter. Detective Alvarez also expressed concern that there appears to be unidentified and improper audio commentary at the end of the proposed exhibit. Under these circumstances, Ms. Berry's failure to timely disclose the video in discovery was neither substantially justified nor harmless. Accordingly, this exhibit is excluded. Fed. R. Civ. P.

---

[2] At the pretrial conference, Detective Alvarez confirmed that the objections based on the vagueness of Ms. Berry's identification of various exhibits have been resolved. Detective Alvarez's objections to Ms. Berry's proposed Exhibit 7 (an Internal Affairs report) are addressed in the separate order on Detective Alvarez's motions in limine, which will be filed concurrently with this order.

37(c)(1); *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

### b.     Ms. Berry's Exhibit 12

This exhibit is identified by Ms. Berry as "POST Learning Domains." *See* Dkt. No. 68-2. She says that she intends to rely primarily on the portions of this exhibit referenced by her expert, Roger Clark, in his report. As discussed at the pretrial conference, the parties shall confer about Exhibit 12 to see if they can agree about excerpts of the proposed exhibit that may be presented at trial. They shall promptly advise the Court if they cannot agree.

### c.     Ms. Berry's Exhibits 13-17 (Medical Records)

As noted above, Ms. Berry's proposed Exhibits 13-17 are medical records from various providers that she seeks to introduce into evidence through several record custodians. Detective Alvarez objects principally on the ground that the documents were not timely disclosed or produced in discovery. Detective Alvarez also asserts that the records are hearsay and lack foundation. Fed. R. Evid. 802, 901.

There is no dispute that Ms. Berry did not produce these records until nearly one month after the November 30, 2022 fact discovery cutoff. Based on the discussion at the pretrial conference, it also appears to be undisputed that Ms. Berry did not identify these records in her Rule 26(a) initial disclosures, and although she did identify the records *custodians* for some of these medical records at that time, she did not identify any of her treatment providers. *See* Dkt. No. 68-1 at 4-5. Ms. Berry says that she made diligent efforts to secure the medical records, but claims that the providers largely ignored her efforts to do so. Even so, Ms. Berry never moved for an order compelling production of the records, and she acknowledged at the pretrial conference that she did not attempt to subpoena the documents. While the Court understands that Ms. Berry faced certain challenges, to the extent she intended to rely on this evidence, it was incumbent upon her to make diligent efforts to obtain the records, including through available discovery tools, and to timely produce it in discovery, or to seek an extension of deadlines from the Court as necessary. Ms. Berry did not do any of these things. Moreover, the discussion at the pretrial conference indicates that for at least some records (e.g., San Leandro emergency records), there may be considerable (and unexplained) time gaps of several months between the date of the November 3,

2019 incident and the treatment sought, raising potential questions regarding the alleged cause of the claimed injuries, which Detective Alvarez would have had an opportunity to explore in discovery had the records been provided in a timely fashion. Under these circumstances, Ms. Berry's failure to timely disclose these medical records in discovery was neither substantially justified nor harmless. Accordingly, Ms. Berry's proposed Exhibits 13-17 are excluded. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

### d. Ms. Berry's Exhibit 21 (*Pitchess* Motion)

This exhibit is a copy of the *Pitchess*[3] motion Ms. Berry filed in the criminal prosecution against her. Detective Alvarez objects that the exhibit is irrelevant. Fed. R. Evid. 401, 403. Ms. Berry contends that the document is relevant to her malicious prosecution claim.

As discussed at the pretrial conference with respect to Detective Alvarez's Motion in Limine No. 4, the Court invites the parties to submit further briefing, including specifically caselaw, that bears on the question of whether Ms. Berry may offer evidence of the facts and circumstances that preceded the dismissal of the criminal prosecution against her, and whether counsel may argue to the jury that they should infer from those circumstances that the prosecution lacked merit, or was the product of malicious motivation. The parties may file supplemental briefs on this point no later than **April 24, 2023**.

Ms. Berry does not object to any of Detective Alvarez's trial exhibits.

### 6. List of Interested Persons

By **May 12, 2023**, the parties shall submit one joint list of interested persons and entities. The joint list should include the names of the parties and witnesses who may or will be called at trial, the attorneys and their places of employment, and any other persons who were materially involved in working on the case. This list will be used to assist the Court and the parties in assessing whether any prospective jurors should be excused from service based on a connection with an interested person.

---

[3] *Pitchess v. Super. Ct.*, 11 Cal.3d 531 (1974).

6

**7. Jury Instructions and Verdict Form**

The parties are directed to submit their joint proposed jury instruction by **April 19, 2023**. The Court sets a jury instruction conference for **May 15, 2023 at 10:30 a.m.** by Zoom video conference. The Court anticipates providing the parties a set of draft instructions and a draft verdict form for their review by **May 12, 2023**.

**8. Jury Selection Process**

All prospective jurors will be shown the Northern District of California's Unconscious Bias video, unless the Court sustains an objection to the video. The video is available for viewing on the Court's website at https://www.cand.uscourts.gov/attorneys/jury-video. Any objections to the showing of the video must be made at least 7 days in advance of trial.

In this district, all prospective jurors fill out a standard online questionnaire to determine whether they are legally qualified to serve as jurors and whether they should be excused for COVID-19 related reasons. The questionnaire also asks for basic demographic and background information. A copy of the standard questionnaire that will be sent to prospective jurors is appended to this order. The Court will include the additional question requested by the parties in the "Background questions" section of the questionnaire, with a slight modification to the formatting to be consistent with other questions in the form questionnaire: "Have you or someone you know ever been unfairly detained or arrested by a police officer?  ___ No.  ____ Yes. Please explain."

The jury office expects to email the completed questionnaires to the Court and counsel for the parties on **May 11, 2023**. The Court will hold a hearing to determine whether any prospective jurors must be excused for hardship based on responses to the questionnaires on **May 15, 2023 at 10:30 a.m.** by Zoom video conference.

Completed jury questionnaires shall be maintained by counsel for the parties in confidence, and must be destroyed within 10 days after the jury is excused unless the Court orders otherwise.

Counsel must avoid voir dire questions that may be unduly intrusive on jurors' privacy and questions that seek to precondition jurors in favor or against one party or the other. The only legitimate purpose of voir dire is to examine the prospective jurors for bias and partiality.

The jury will consist of 8 jurors.  Each side has 3 peremptory challenges.  Fed. R. Civ. P. 47; 28 U.S.C. § 1870 ("In civil cases, each party shall be entitled to three peremptory challenges.").

**9. Jury Trial**

The jury trial will be held in Courtroom 2, 5th floor, 280 South First Street, San Jose, California.[4]  The jury trial will be held on the following days, unless otherwise ordered by the Court:  **May 17-19, 22-23, 2023.**  Trial will be conducted from 9:00 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m., with short morning and afternoon breaks.  Counsel may need to arrive earlier or stay later to address any matters that must be heard out of the presence of the jury.

Each side will each have up to 15 minutes for voir dire.

Each side will have up to 1 hour for opening statements.

Each side will have up to 7 hours for the presentation of evidence (direct and cross-examination of witnesses).

Each side will have up to 1 hour for closing arguments.

During deliberations the jury can take lunch and breaks whenever they choose to do so. The jury can deliberate on consecutive business days.

**10. Exclusion of Witnesses, Recording, and Photographing**

All fact witnesses, other than the parties themselves, are excluded from the courtroom and may not have access to a record or summary of the trial evidence until they have completed their testimony, have been excused by the Court, and are not subject to recall.  Recording and photographing in the courtroom are prohibited.

**11. Order and Timing of Witnesses/Exhibits**

The parties are expected to provide each other with notice of the order and timing of witnesses to be called at trial, the exhibits to be used with each witness (other than for impeachment), and demonstratives to be used with witnesses, in opening statements and in closing

---

[4] The parties may contact courtroom deputy Adriana Kratzmann to schedule a time to familiarize themselves with the courtroom and the courtroom technology, if they wish.

8

arguments.[5] The parties must confer in advance of trial regarding the manner and timing of such notices so that objections may be raised with and resolved by the Court without delaying the conduct of the trial.

### 12. Trial Transcripts

Instructions on how to file a request for a transcript using Form CAND-435 are available at https://cand.uscourts.gov/about/clerks-office/transcripts-court-reporters/.

### 13. Electronic Equipment

If a party wishes to bring electronic equipment or other large items into the courthouse, the party must file a request and proposed order with the Court by **May 10, 2023**. Such equipment must be tested in the courtroom prior to trial. Arrangements may be made with Judge DeMarchi's courtroom deputy, Adriana Kratzmann, at vkdcrd@cand.uscourts.gov.

### 14. Assessment of Jury Costs

If the parties reach a settlement and fail to notify the Court and dismiss the case by **May 15, 2023 at 12:00 p.m.,** the Court will assess jury costs pursuant to Civil Local Rule 40-1. Such costs shall be evenly split between each side and will include juror fees, juror mileage reimbursement, and juror parking reimbursement.

**IT IS SO ORDERED.**

Dated: April 13, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[5] For opening statement and closing argument, if the demonstrative, or a portion of it, merely summarizes statements counsel intends to make in the statement or argument, that demonstrative or pertinent portion of it need not be disclosed to the other party or parties, unless the parties agree otherwise.

9



## CA-Northern District Court: Juror Questionnaire 2023

Thank you to all our prospective jurors!

**Please answer each question as completely and as accurately as you can. You may not do any research on this case, discuss the questions or case with anyone, or receive any assistance in completing the questionnaire. The completed questionnaire will be shared with the judge, attorneys, and parties to the case, and otherwise only upon express order of the Court. Thank you so much for your cooperation.**



# CA-Northern District Court: Juror Questionnaire 2023

## Basic information about you

* 1. Your full name (first and last)

* 2. Your age

* 3. What city or town do you live in?

* 4. How many years have you lived there?

* 5. Where were you born?



## CA-Northern District Court: Juror Questionnaire 2023

**Information about your work & education**

\* 1. What is your current employment status?

- ( ) Working full-time
- ( ) Working part-time
- ( ) Unemployed – looking for work
- ( ) Unemployed – not looking for work
- ( ) Homemaker
- ( ) Full-time student
- ( ) Retired
- ( ) Disabled

\* 2. What is your occupation? (If not currently employed, please name your most recent prior occupation.)

[                                    ]

\* 3. Who is (or was) your employer?

[                    ]

\* 4. How long have you worked for this employer (or how long did you work there)?

[                    ]

\* 5. Please answer the following about your education, or enter "none" if not applicable:

| | |
|---|---|
| What is the highest level of education you completed? | [        ] |
| What college and/or vocational schools have you attended? | [        ] |
| What was your major area of study? | [        ] |



## CA-Northern District Court: Juror Questionnaire 2023

### Information about your household

* 1. What is your marital status?

　○ Single   ○ Married or Living with Partner   ○ Separated or Divorced   ○ Widowed

* 2. If you have children, please list their age(s) and occupation/employer if appropriate. (If you do not have children, please enter "none.")

* 3. Please list the occupation/employer of your spouse, partner, or any other adults who live with you. (If you do not live with other adults, please enter "none.")



## CA-Northern District Court: Juror Questionnaire 2023

### Previous jury service

* 1. Have you ever served on a jury before?
  - ○ No
  - ○ Yes. When and where did you serve on a jury?

* 2. Did the jury/juries you served on reach a verdict?
  - ○ No
  - ○ Yes
  - ○ Mixed (some did and some did not reach a verdict)
  - ○ Have not served on a jury

* 3. Were the jury/juries you served on civil or criminal?

Number of civil juries served on: _____

Number of criminal juries served on: _____

* 4. Were the jury/juries you served on in municipal/state court or in federal court?

Number of municipal/state juries served on: _____

Number of federal juries served on: _____



## CA-Northern District Court: Juror Questionnaire 2023

### Background questions

* 1. Do you have any religious views which might affect your service as a juror?

   ○ No

   ○ Yes. Please explain:

   [                                        ]

* 2. Have you or any close relatives been the victim of any kind of crime?

   ○ No

   ○ Yes. Please describe the crime and circumstances:

   [                                        ]

* 3. Are any members of your immediate family employed by law enforcement?

   ○ No

   ○ Yes. Please describe:

   [                                        ]

* 4. Would you tend to believe or disbelieve the testimony of a law enforcement officer based on their profession?

   ○ No

   ○ Yes. Please explain:

   [                                        ]

* 5. If you were to serve as a juror in a criminal case, would you have any difficulty with the fact that the defendant in a criminal case is not required to testify?

◯ No

◯ Yes. Please explain:

* 6. Have you or a close friend or relative ever been discriminated against because of race, ethnic background, gender, religion, disability, sexual identity or preference, or economic status?

◯ No

◯ Yes. Please explain:

* 7. Do you have any strong feelings about awarding money to the winning party in a civil case?

◯ No

◯ Yes. Please explain:

* 8. Have you, your relatives, or anyone close to you ever been involved in a lawsuit of any kind either as a plaintiff, defendant, or witness?

◯ No

◯ Yes. Please describe:



# CA-Northern District Court: Juror Questionnaire 2023

## Final questions and juror oath

1. Is there anything you'd like the judge in this case to know?

* 2. Are you fully vaccinated for COVID-19 (one dose of Johnson & Johnson or two doses of Moderna or Pfizer) and have you received a booster?

○ No, not fully vaccinated

○ Yes, fully vaccinated. No booster

○ Yes, fully vaccinated **with** booster

○ Decline to answer

Please provide date of most recent shot:

* 3. JUROR'S OATH:
I, the undersigned, declare under penalty of perjury that my answers set forth in this Jury Questionnaire are true and correct to the best of my knowledge and belief. I have not discussed my answers with anyone else or received assistance in completing the questionnaire.

Your name:

Today's date: